
FILED
MAR 29 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TRAVIS DOMINICK JONES,

    Petitioner,

v.    Civil Action No. 3:09CV215

DAVID EVERETTE, WARDEN,

    Respondent.

## MEMORANDUM OPINION

Travis Dominick Jones, a Virginia prisoner with counsel, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the County of Chesterfield ("the Circuit Court"). Jones contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim One | The evidence was insufficient to convict Jones of the two counts of murder and the two accompanying firearm charges. |
| Claim Two | The evidence was insufficient to convict Jones of conspiracy to commit robbery, the robbery of Michael Brown, and the accompanying firearm charge. |
| Claim Three | Jones was denied the effective assistance of counsel because counsel failed to argue that nothing was taken from Michael Brown. |
| Claim Four | Jones was wrongfully convicted as a principal in the second degree in the absence of anyone being identified as the principal. |
| Claim Five | Appellate counsel rendered ineffective assistance by failing to argue that Jones was wrongfully convicted as a principal in the second degree to the murders of Michael Brown and Jamian Jackson. |

Respondent has moved to dismiss on the grounds that Claims One and Five lack merit and the remaining claims are procedurally defaulted and barred from review here. Jones has responded. The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

On July 19, 2005, following a bench trial, Jones was convicted of two counts of first degree murder, two counts of use of a firearm in the commission of a murder, one count of robbery, one count of use a firearm in the commission of a robbery, and one count of conspiracy to commit robbery. Thereafter, Jones filed a petition for appeal with the Court of Appeals of Virginia wherein he asserted that: (a) the evidence was insufficient to convict him of the conspiracy to commit robbery, the robbery of Michael Brown, and the accompanying firearm charge; and (b) the evidence was insufficient to convict him of the two counts of murder and the accompanying firearm charges. The Court of Appeals of Virginia rejected both assertions and affirmed Jones's convictions.

Jones pursued a second-tier appeal to the Supreme Court of Virginia wherein he raised essentially the same claims. On September 21, 2007, the Supreme Court of Virginia refused Jones's petition for appeal.

On May 21, 2008, Jones filed a pro se petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he claimed he was entitled to relief upon the following grounds:

2

> [State Habeas] CLAIM 1
> The evidence was insufficient to convict petitioner of two counts of murder and the two accompanying firearms charges in the principal of second degree. . . .
> [State Habeas] CLAIM 2
> The evidence was insufficient to convict petitioner of conspiracy to commit robbery, the robbery of Michael Brown and the accompanying firearm charge. . . .
> [State Habeas] CLAIM 3
> Appeal counsel provided ineffective assistance by inadvertantly [sic] failing to argue the requirements to be guilty of "principal in the second degree of murder and accompanying firearms charges," as well as "comspiracy [sic] to commit robbery, th[e] robbery of Michael Brown and the accompanying firearm charge.
> [State Habeas] CLAIM 4
> The Commonwealth witnesses . . . committed perjury under oath . . . .

(State Habeas Petition ¶ 14.) The Supreme Court of Virginia refused to review Jones's general challenges to the sufficiency of the evidence in State Habeas Claims 1 and 2 on the ground that he had raised the same claims on direct review. Jones v. Dir. Dep't of Corr., No. 080980, at 2 (Va. Sept. 25, 2008) (hereinafter "State Habeas Op."). Furthermore, citing Slayton v. Parrigan, 205 S.E.2d 680 (1974), the Supreme Court of Virginia found that all of State Habeas Claim 4 and those aspects of State Habeas Claim 1 which asserted that the evidence was insufficient to convict him as a principal in the second degree, were barred because they could have been, but were not raised at trial and on direct review. (State Habeas Op. 2, 3.) Additionally, the Supreme Court of Virginia found State Habeas Claim 3 lacked merit.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all "available state remedies before he can apply for federal habeas relief." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997)).[1] The second aspect of exhaustion, which is the primary concern in the present case, requires a petitioner to have offered the state's courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)

---

[1] Under this aspect of exhaustion, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

4

(quoting Matthews, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." Id. (citing Duncan, 513 U.S. at 366); see Gray v. Netherland, 99 F.3d 158, 162-64 (4th Cir. 1996)(concluding petitioner had not fairly presented his legal argument to the state courts).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

Jones has not presented Claim Three to the Supreme Court of Virginia. If Jones now attempted to present that claim to the Supreme Court of Virginia, that court would find the claim barred under Virginia Code Section 8.01-654(A)(2). That statute provides, in pertinent part, that "[a] habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. 8.01-654(A)(2) (West 2010). This statute of limitations constitutes an adequate and independent state procedural rule. See Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). Thus, Claim Three is procedurally defaulted and will be dismissed.

The Supreme Court of Virginia found Claim Four (State Habeas Claim 1), which pertains to whether Jones's assertion that he was unlawfully convicted as a principal in the second degree with respect to the murder and related firearms counts, to be barred by the rule in Slayton v. Parrigan, 205 S.E.2d 680 (1974), because it could have been, but was not, raised at trial and on direct appeal. Slayton is an adequate and independent state procedural rule when so applied. See Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir.

1997). Therefore, Claim Four is procedurally defaulted.[2] Claim Four will be dismissed.

Respondent contends that Claim Two[3] is procedurally defaulted because the Court of Appeals of Virginia "found the claim to be procedurally defaulted because the petitioner had not raised it in the trial court, pursuant to Rule 5A:18, the contemporaneous objection rule in the Court of Appeals of Virginia."[4] (Respt.'s Br. in Supp. of Mot. to Dismiss ¶ 10.) Respondent is incorrect. The Court of Appeals of Virginia addressed Claim Two on the merits. The Court of Appeals of Virginia applied Rule 5A:18 only to Jones's argument that he could not be guilty of robbing Michael Brown because "'[i]f anything was taken, it was taken from [Jamian] Jackson.'" Jones v. Commonwealth, Record No. 0426-06-2, at 5 n.4

---

[2] To the extent that Jones contends that the ineffective assistance of appellate counsel set forth in Claim Five constitutes cause sufficient to excuse his default, that assertion of cause is rejected for the reasons set forth in conjunction with the dismissal of Claim Five. See infra Part V.

[3] As previously noted, in Claim Two, Jones contends that the evidence was insufficient to convict Jones of conspiracy to commit robbery, the robbery of Michael Brown, and the accompanying firearm charge.

[4] That rule provides:
No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.
Va. Sup. Ct. R. 5A:18 (West 2010).

(Va. Ct. App. Nov. 28, 2006) (alteration in original) (hereinfafter "Va. Court of Appeals Op."). Rule 5A:18 constitutes and adequate and independent procedural rule. See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000). Only that aspect of Claim Two, which contends that the evidence shows a robbery from Jackson rather than Brown, is procedurally defaulted and will be dismissed for that reason. The Court will address the merits of the remaining aspects of Claim Two.

### III. THE APPLICABLE SUBSTANTIVE AND PROCEDURAL CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

This Court's authority to grant habeas corpus relief is governed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that this standard requires federal habeas petitioners to demonstrate not only that the state court's decision was erroneous or incorrect, but also that it was unreasonable. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

## IV. SUFFICIENCY OF THE EVIDENCE

A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).

The Virginia Court of Appeals aptly summarized the evidence of Jones's guilt as follows:

> On March 20, 2003, Anthony McWilliams and his companions, Justin Tinsley and Jerry Smith, got in touch with appellant to help them find marijuana and cocaine. Appellant, in turn, contacted Michael Brown and Jamian Jackson, and arranged a meeting. According to McWilliams, appellant told the group "they was [sic] gonna rob them for their weed." Appellant also told the men they would have to kill Brown and Jackson "so they couldn't get back to [appellant], because [he] was the only one that knew them." The group then drove to Tinsley's home to retrieve his gun.
> McWilliams testified that Brown and Jackson showed appellant and McWilliams a large shopping bag containing

9

"a lot of" smaller plastic sandwich bags filled with marijuana and cocaine. Appellant told Brown and Jackson to take McWilliams to pick up a scale at an apartment complex. Before McWilliams got into the car, appellant took him aside and instructed him "to take them to the spot so that we [could] shoot them in the head."

According to McWilliams, he lost his nerve by the time he arrived at the apartment complex, and tried to leave. Instead, he encountered appellant, who had arrived separately. Appellant took the gun from McWilliams, and McWilliams took off running. As he ran, McWilliams heard two shots fired.

An apartment complex resident, Richard Arriega, witnessed the shooting. He was standing outside when he heard a gunshot. When Arriega looked in the direction of the sound, he saw a flash inside a parked vehicle from a second gunshot. He then saw a black male wearing a tan and black Avirex jacket[5] get out of the car and begin running, only to stop and return to the car. The man retrieved something from inside the car and took off again.

Police officer Dominic Rosamilia responded to the scene. He found two black males with gunshot wounds to their heads and a small plastic bag of marijuana on the ground next to driver's door. A cell phone traced[6] to Brown fell out of the passenger door, and a second, inoperable cell phone was found on the front seat. Police were unable to connect the phone to Brown or Jackson.

Elias Wilson, appellant's cellmate, testified appellant told him he left his cell phone in the car, and was afraid police could trace it to him. Appellant also told Wilson he was worried his phone number[7] would show up on the victim's cell phone. In fact, phone records showed appellant placed two calls to Brown shortly before the murders, and also showed two "hits" on appellant's cell phone shortly after the murders, both of which were routed through a cell tower near the murder scene.

---

[5] McWilliams testified at trial that appellant was wearing a "tannish" Avirex jacket on the night of the murders.

[6] Cell phone records established Brown and appellant exchanged calls shortly before the murders.

[7] Appellant was using his mother's cell phone on the evening of the murders.

> According to Wilson, appellant told him "they were trying to pin a capital murder on him" in connection with the shooting of two men. Appellant said the murders took place "at an apartment complex over in Chesterfield" after appellant had led the victims "to believe they wanted to buy drugs from them." He told Wilson "he called them up basically to buy drugs, but he was going to rob them." Appellant told Wilson he was waiting at the apartment complex when Brown and Jackson arrived, and after shooting them, appellant "took the drugs and stuff, and fled." Appellant explained some of the drugs were left behind "to make it look like a drug deal gone bad . . . ."
>
> Bryan Holmes told police he purchased marijuana from Michael Brown the afternoon before he was murdered, and the next day, bought marijuana from appellant. According to Holmes, the bag he purchased from appellant "appeared . . . to be the same bag . . . he purchased from Michael Brown . . . ." He said "it was packed the same or wrapped the same . . . ." Holmes commented that it "tasted and smelled the same," noting "it was very fruity."
>
> Appellant initially told police he exchanged phone calls with Brown on March 20th, but denied meeting him; instead, he claimed he was working at the time of the murders. About a month later, however, appellant admitted he bought marijuana from Brown on March 20th. He stated he phoned Brown about a second purchase that day, but ended up buying the drugs from another dealer. When police spoke with appellant in June 2004, he admitted he had phoned Brown on the pretense of buying drugs, stating, "We were going to rob them." He also told Detective Darryl Skinner "he told the guys he didn't want it to come back on him, and he told them, 'Don't rob him and let it come back on me.'"

Court of Appeals Op. 1-3. Jones contends that the evidence was insufficient to identify him, rather than McWilliams, as the individual who had shot and killed Jackson and Brown, and then robbed Brown. He is incorrect. When considered in the light most favorable to the prosecution, the evidence amply demonstrates

11

Jones's guilt.[8] McWilliams's account of the robbery and murders was corroborated by Jones's statements to his cellmate, Elias Wilson. Furthermore, numerous pieces of circumstantial evidence, including Jones's cell phone records, his possession of the marijuana that resembled the marijuana possessed by Jackson and Brown, and his statements to the police amply demonstrated that Jones was the architect, if not the actual perpetrator, of the joint enterprise of robbing and killing Jackson and Brown. Accordingly, Claims One and Two will be DISMISSED.

## V. PURPORTED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Appellate "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising

---

[8] Jones was convicted as a principal in the second degree with respect to the murders. Va Code § 18.2-18 ("In the case of every felony, every principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . .") A principal in the second degree is one who "consented to the felonious purpose" of the perpetrator and "contributed to [the] execution [of that felony]." McMorris v. Commonwealth, 666 S.E.2d 348, 350 (Va. 2008) (citing cases). In the present circumstances, "[t]he defendant's conduct must consist of 'inciting, encouraging, advising or assisting in the murder[s]'" and robbery. Rollston v. Commonwealth, 399 S.E.2d 823, 825 (Va. Ct. App. 1991) (quoting Frye v. Commonwealth, 345 S.E.2d 267, 280 (Va. 1986)). The Court of Appeals of Virginia concluded that "[e]ven assuming that the evidence failed to prove [Jones] was the shooter, the fact finder was entitled to conclude he knew of and approved the plan to shoot Brown and Jackson for their drugs." Ct. of Appeals Op. at 6.

issues for review.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (second alteration in original) (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983)). Additionally, counsel is presumed to have selected the issues that were most likely to afford appellate relief. Id. at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). Thus, "'only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. at 164 (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

In Claim Five, Jones faults appellate counsel for not arguing that Jones was wrongfully convicted as a principal in the second degree murders of Michael Brown and Jamian Jackson, "in the absence of any evidence that anyone other than the Petitioner committed the crime." (Mem. in Supp. of § 2254, 22.) Jones does not identify any decision from the Virginia courts that supports the above proposition. Moreover, "the identification or conviction of the principal is not a prerequisite to the conviction of [a defendant] as a principal in the second degree, as long as the record proves the occurrence of the underlying offense." Gillison v. Commmonwealth, No. 1910-08-2, 2009 WL 3425361, at *2 n.2 (Va. Ct. App. Oct. 27, 2009) (citing Taylor v. Commonwealth, 537 S.E.2d 592, 594 (Va. 2000)). Thus, the Supreme Court of Virginia's rejection of Jones's claim was reasonable. Claim Five will be DISMISSED.

## VI. CONCLUSION

The motion to dismiss (Docket No. 5) will be GRANTED. The petition for a writ of habeas corpus will be DENIED and the action will be DISMISSED WITH PREJUDICE.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). For the reasons stated above, Jones has not satisfied this standard. Accordingly, the Court will deny a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum Opinion to counsel of record.

And it is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: March 29, 2010
Richmond, Virginia